## Newman's Estate.

George B. *Reimensnyder*, for petitioner; *A. F. Gilbert*, contra.

POTTER, P. J., July 23, 1930.—John F. Newman died on July 18, 1929, intestate, without issue, leaving to survive him his widow, Nora Newman, who is

administratrix of his estate, and collateral heirs, all of whom need not be named in these proceedings.

The widow applied to this court for the appointment of appraisers to appraise and set apart to her what property she was entitled to under her $500 and $5000 exemptions. We appointed M. A. Wenrich and W. L. Wehr as appraisers. They appraised the home at the sum of $2050 and a tract of woodland at $300, as well as other assets of this decedent going to make up her exemptions. The appraisement was later confirmed absolutely, no exceptions having been filed to it. The widow shortly thereafter sold the home for the sum of $3000, and she is asked to account to the estate for the difference between the appraisement of it at $2050 and the selling price of $3000, that being the main question before us.

We have personally and intimately known these appraisers for many years. When we appointed them, we knew them to be men of probity and good sound judgment, else we would not have appointed them. They appraised this home at what they thought it would bring at a public sale. This is what they were to do, and we expected them to do so. We are familiar with this home and have known it for years, and we do not consider it worth more than approximately $2000. We would not give more than that sum for it. If a purchaser paid $3000 for it, he certainly paid more than it is worth on the market. We think this appraisement of this home is about correct.

The petitioner seems to think this widow should pay back into the estate the difference between the appraised value of $2050 and the selling price of $3000, or $950. We fail to see why she should. If the property had sold for $950 less than the appraised value, would the petitioner make up to her the loss? We think not, and we know of no law that would compel the heirs to make up the loss, if any. Then, if the widow would need to bear the loss alone, why should she not also enjoy the benefit of the gain, if any? This rule, if it is one, should work both ways. Many times in the sale of property of a decedent, more or less money is realized from a sale than the appraised value.

It is also complained that money placed in bank was taken by the widow, but we find that the deposits were joint, made in the name of both husband and wife; consequently, on the death of the one, they pass *in toto* to the other.

It is also complained that no notice was given the petitioner of the time of holding the appraisement, in support of which we are cited to clause j of section eleven of the Fiduciaries Act of June 7, 1917, P. L. 447, and to clause d, section twelve of the same act, P. L. 472. We have examined these citations, and in neither one do we find it necessary that such notice be given by anyone. Nor do our rules of court provide for it. After the appraisement is made, advertisement of it is to be made in two newspapers for three successive weeks before being presented to us for confirmation. This gives notice to anyone interested. The advertisement in this case was made in the "Middleburg Post," a weekly newspaper of wide circulation in Snyder County, which comes into the family of the petitioner and is read by her. At least, she says she reads it. We deem this to have been the legal notice required. Had the petitioner had any grievance relative to this appraisement, she should have secured counsel and filed exceptions to it. But we think she has let her day go by. However, if we saw any real merit in the contention of the petitioner, we might seriously consider the advisability of opening the confirmation. But we can see no reason for so doing in the light of the circumstances as we know them.

And now, to wit, July 23, 1930, the citation is discharged, at the costs of the petitioner.